**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ROGER SNYDER, individually and on
behalf of others similarly situated,

    Plaintiff,

v.

GENERAL MOTORS, LLC,

    Defendant.
_____/

Case No.: 1:21-cv-24256

CLASS ACTION

## CLASS ACTION COMPLAINT

Plaintiff, Roger Snyder ("Snyder" or "Plaintiff"), by and through undersigned counsel, brings this class action complaint against General Motors, LLC ("GM" or "Defendant") on behalf of all persons in the United States who are current or former owners and/or lessees of model year 2020 GMC Sierra 1500 and 2020 Chevy Silverado 1500 ("Class Vehicles"). Plaintiff alleges as follows, based on personal knowledge, and upon information and belief as to all other matters:

## INTRODUCTION

1.    On or about September 28, 2020, Plaintiff purchased a new 2020 GMC Sierra 1500 from a local car dealership in Pembroke Pines, Florida. Plaintiff consulted the Trailering Information Label on the 2020 GMC Sierra 1500 prior to purchasing the vehicle, because he intended to use the 2020 GMC Sierra 1500 specifically to tow a recreation vehicle. Accordingly, Plaintiff relied on the advertised gross combined weight rating ("GCWR")[1] of 16,800 pounds when purchasing the 2020 GMC Sierra 1500.

---

[1] GCWR is the total allowable weight of the completely loaded vehicle and trailer, including any fuel, passengers, cargo, equipment and accessories. *See* Owner's Manual at 293.

2. Then, in April 2021, GM sent a letter to Plaintiff and Class Members informing them that the advertised GCWR on the Trailering Information Label for the 2020 GMC Sierra 1500 was inaccurate. According to Defendant's disclosure, Plaintiff's 2020 GMC Sierra 1500 had a GCWR of 15,000 pounds – 1,800 pounds less than the GCWR that Defendant used to advertise and sell the vehicles to Plaintiff and Class Members. The 2020 Chevrolet Silverado 1500 was likewise affected by incorrect Trailering Information Labels.

3. Had Plaintiff and Class Members known that the Class Vehicles' actual GCWR at the time of purchase, and in light of the safety hazard posed by towing loads in excess of a vehicle's capacity, they would have not bought the Class Vehicles or would have paid much less. As such, Plaintiff and Class members have not received the value of their bargain in purchasing their Class Vehicles and have suffered damages.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over Defendant because Defendant has conducted and continues to conduct business in the State of Florida, and because Defendant has committed the acts and omissions complained of herein in the State of Florida.

5. Venue as to Defendant is also proper in this judicial district. A significant number of Class Vehicles and other GM automobiles are sold in this district, Defendant has dealerships in this district, and much of Defendant's acts and omissions occurred in Miami-Dade County, Florida.

6. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Upon information and belief, there are well over 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of

$5,000,000, exclusive of interests and costs, and this is a class action in which Defendant and class members are citizens of different states.

**PARTIES**

7. Plaintiff Roger Snyder is a Florida citizen who resides in Palmetto Bay, Florida. In September 2020, Plaintiff purchased a 2020 GMC Sierra 1500 pickup truck from a local GM dealership. Plaintiff purchased his 2020 GMC Sierra 1500 primarily for personal, family or household use. The vehicle was manufactured, sold, distributed, advertised, marketed and warranted by GM and bears Vehicle Identification No. 3GTP9EED7LG400067.

8. Defendant General Motors, LLC ("GM") is a Delaware limited liability company with its principal place of business in Michigan. GM manufactured, marketed, distributed, and warranted the 2020 GMC Sierra 1500 and 2020 Chevrolet Silverado. GM designs, builds, markets and sells the Class Vehicles throughout the United States, including Florida.

**SUBSTANTIVE ALLEGATIONS**

9. Each year the automobile industry is shaped by increasing competition and rising standards. For trucks, towing capability is a major point of competition among top manufacturers and thus a central feature of advertising campaigns.

10. Specifically, trailering and towing capabilities are key components of the marketing materials for GM's most popular vehicles, the GMC Sierra and Chevrolet Silverado.[2] The vehicles are touted as "work horses" that provide consumers the ability to "tow like a pro." Specifically, GM represents that "with the available 6.2L V8 and Max Trailering Package, Sierra can trailer up to 12,100 lbs." GM further markets the Sierra truck as having "serious pulling power in a premium

---

[2] In 2020, sales of the popular Silverado increased by 3.2% to 594,000 vehicles, and sales of the Sierra increased by 9% to 253,016, both surpassing all other brand models. *See* https://www.best-selling-cars.com/usa/2020-full-year-usa-gm-sales-chevrolet-buick-cadillac-gmc/.

pickup" with "available technologies to make the towing experience effortless." According to GM, "[t]hese innovations reflect the thoughtful approach GMC brings to engineering first-class vehicles" for "real professional-grade trailering."[3]

11. One of the critical aspects of a vehicle's towing capacity is its GCWR, or the total allowable weight of the completely loaded vehicle and trailer, including any fuel, passengers, cargo, equipment and accessories. In the 2020 GMC Sierra 1500 owner manual and GMC's 2020 Trailering Guide, GM expressly advises consumers to consult the Trailering Information Label in their vehicle in order not to exceed the GCWR. The Trailering Information Label, an industry first implemented by GM in 2019, is a sticker inside of the driver's doorjamb with VIN specific specifications for a vehicle's towing and trailering capacity, including the GCWR:



12. Chevrolet provides nearly identical information:

---

[3] https://www.gmc.com/gmc-life/trucks/sierra-towing-technology

**Trailering Label** This industry-first label is located on the driver-side door jamb and provides information that's specific to your vehicle and vital to towing, including GVWR,[1] GCWR,[2] GAWR[3] for the rear axle, maximum payload, maximum tongue weight and curb weight. Available on Silverado 1500, 2500 HD and 3500 HD.



13. GM warns consumers that exceeding the GCWR while towing "could not only cause severe damage to your vehicle or trailer, but also put yourself, your passengers and others in danger."[4] In fact, its "Number 1 tip for safe trailering" is to "stay within your limits" by "review[ing] the towing capacity of your specific vehicle and ensure it's capable of handling the weight of your trailer… [and to] "ensure your loaded vehicle and loaded trailer do not exceed the gross combination weight rating (GCWR) set by the manufacturer."[5]

14. Unfortunately for Plaintiff and Class Members, GM's marketing claims and technical specifications regarding the 2020 GMC Sierra and 2020 Chevrolet Silverado grossly overstated the vehicle's actual ability to safely and reliably trailer heavy loads. In or about April 2021, Neelie O'Connor, GM's Global Executive Director of Customer Experience Operations sent Plaintiff and Class Members a letter ("Notice Letter") advising them of the Class Vehicles' actual

---

[4] https://www.gmc.com/gmc-life/how-to/how-to-find-your-tow-rating
[5] https://www.gmc.com/gmc-life/trucks/tips-for-safe-trailering-and-towing

GCWR, which had been previously overstated by 1,800 pounds. A copy of the Notice Letter is attached as Exhibit 1 and is incorporated herein as if set forth in full.

15. Despite the aforementioned warnings, GM did not issue of recall of the Class Vehicles. Rather, GM simply mailed a letter enclosing a new Trailering Information Label and left it up to Plaintiff and Class Members to open the letter, review its contents, and place the label in their vehicle.

16. Unfortunately, this isn't the first time that GM has advertised its vehicles with overstated trailering capabilities, even within the same line of vehicles. In December 2015, a class action lawsuit was filed against GM for selling the 2014 Sierra 1500 and 2014 Silverado 1500 with an advertised capacity of nearly 2,000 pounds more than the trucks could actually tow. Then, in November 2020, GM notified consumers and dealerships about incorrect trailering labels on the 2021 Chevy Tahoe and GMC Yukon, where information such as the GCWR was zeroed out on the label.

## CLASS ALLEGATIONS

17. Pursuant to Fed. R. Civ. P. 23(a), (b)(3) and (c)(4), Plaintiff seeks certification of the following nationwide class and Florida subclass:

> **Nationwide Class:** All persons who purchased or leased a 2020 model year GMC Sierra 1500 Series and/or a 2020 model year Chevrolet Silverado 1500 Series pickup truck in the United States.
>
> **Florida Sub-Class:** All persons who purchased or leased a 2020 model year GMC Sierra 1500 Series and/or a 2020 model year Chevrolet Silverado 1500 Series pickup truck in Florida.

18. Excluded from the Classes are Defendant, its employees, officers, directors, legal representatives, heirs, successors, and wholly- or partly-owned subsidiaries or affiliated

companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

19. Plaintiff reserves the right to modify, expand or amend the definition of the proposed class following the discovery period and before the Court determines whether class certification is appropriate.

20. **Numerosity.** The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, on information and belief, hundreds or thousands of persons in the U.S. have purchased or leased the Class Vehicles. Those names and addresses are available from Defendant's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

21. **Commonality.** Consistent with Rule 23(a)(2) and 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class Members. The common questions include:

   a. Whether the GCWR of the Class Vehicles was lower than that originally advertised and represented by Defendant;

   b. Whether Defendant's statements regarding the trailering and towing capacity of the Class Vehicles were materially false, unfair or deceptive statements;

   c. Whether Defendant knew or should have known that its statements regarding the trailering and towing capacity of the Class Vehicles were false, unfair or deceptive;

   d. Whether Defendant's statements regarding the GCWR were material;

   e. Whether Defendant violated 15 U.S.C. § 2301, *et seq.*;

   f. Whether Defendant violated Florida Statute § 501.201, *et seq.*;

      g. Whether, as a result of Defendant's actions and inactions, Plaintiff and the Classes were damaged; and

      h. Whether Defendant should be financially responsible to Class Members for damages arising out of its false, unfair and deceptive statements regarding the GCWR.

22. **Typicality.** Consistent with Rule 23(a)(3), Plaintiff's claims are typical of those of other Class Members. Plaintiff and Class Members were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic and pervasive pattern of misconduct engaged in by Defendant. Plaintiff has no interests antagonistic to those of Class Members, and Defendant has no defenses unique to Plaintiff.

23. **Adequacy.** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Classes because Plaintiff is a member of the Classes and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's Counsel are competent and experienced in litigating class actions. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Classes's interests.

24. **Predominance & Superiority.** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Common issues in this litigation also predominate over individual issues because those issues discussed in the above paragraph on commonality are more important to the resolution of this litigation than any individual issues. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Classes are relatively

small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

25. **Risk of Prosecuting Separate Actions.** This case is appropriate for certification because prosecuting separate actions by individual proposed Class Members would create the risk of inconsistent adjudications and incompatible standards of conduct for Defendant or would be dispositive of the interests of members of the proposed Classes.

26. **Ascertainability.** The Classes are defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Classes. The Classes consists of persons who purchased or leased the Class Vehicles. Class membership can be determined by using Defendant's records.

## COUNT I
## VIOLATION OF MAGNUSON MOSS WARRANTY ACT ("MMWA")
## 15 U.S.C. § 2301, *et seq*.

27. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 26.

28. Plaintiff brings this cause of action against Defendant on behalf of himself and members of the Nationwide Class.

29. The Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

30. Plaintiff and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

31. GM is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

32. GM sold the Class Vehicles warranting that the Class Vehicles were of a certain quality and standard which they did not meet. In particular, GM sold the Class Vehicles with a warranty that the vehicles were capable of safely and reliably towing trailers and cargo of a certain weight.

33. GM breached this warranty by selling Class Vehicles that were not capable of safely and reliably towing trailers and cargo of the stated weight, and in fact had a and in fact had a GCWR 1,800 pounds below the capacity originally described to Plaintiff and Class Members.

34. GM's breach of its express warranties regarding the GCWR of Class Vehicles was a substantial factor in causing Plaintiff and Class Members to suffer economic damages.

35. Plaintiff, on behalf of himself and on behalf of Class Members, seeks actual damages in an amount to be established at trial.

## COUNT II
## NEGLIGENT MISREPRESENTATION

36. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 26.

37. Plaintiff brings this cause of action against Defendants on behalf of himself and members of the Nationwide Class because materially identical common laws are in effect in states that are part of the proposed Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and members of the Florida Sub-Class only.

38. GM made an untrue representation to Plaintiff and Class Members concerning the GCWR of Class Vehicles, as alleged herein.

39. GM knew, or in the exercise of reasonable diligence should have known, that the GCWR representations were false at the time it made them, yet intended for Plaintiff and Class Members to rely on these representations.

40. Plaintiff and the Class Members justifiably relied on GM's misrepresentations and suffered economic damages as a result.

41. Plaintiff, on behalf of himself and on behalf of Class Members, seeks actual damages in an amount to be established at trial.

**COUNT III**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT ("FDUTPA")**
**Fla. Stat. § 501.201,** *et seq***.**

42. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 26.

43. Plaintiffs and the Class consist of "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

44. Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

45. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fla. Stat. § 501.204(1). Defendant participated in unfair and deceptive trade practices that violated FDUTPA as described herein.

46. Defendant's practice of misrepresenting and falsely advertising the GCWR, and specifically overstating the GCWR, is deceptive. A reasonable person would likely be misled into believing that the person is receiving a vehicle with the capability to safely and reliably tow trailers

and cargo of the stated weight. However, the consumer actually received a vehicle with a GCWR at least 1,800 pounds below the stated weight.

47. As a result of Defendant's deceptive and unfair trade practices, Plaintiff and the Class have suffered damages.

48. Plaintiff and the Class are entitled to recover their actual damages under Fla. Stat. §501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1), and any other just and proper relief available under FDUTPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

a. For an order certifying the proposed Nationwide Class and the proposed Florida Sub-Class, appointing Plaintiff as Class Representative, and designating Plaintiff's counsel of record as Class Counsel;

b. For actual damages as to the First, Second, and Third Causes of Action;

c. For an award of attorneys' fees and costs, as allowed by law;

d. For pre-judgment and post-judgment interest to the extent allowed by law; and

e. For such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demand a trial by jury on all issues so triable as a matter of right on all counts in this Complaint.

Dated: December 6, 2021

Respectfully submitted,

*/s/ Michael E. Criden*
Michael E. Criden (FBN 714356)
Lindsey C. Grossman (FBN 105185)
CRIDEN & LOVE, P.A.

7301 SW 57th Court, Ste. 515
South Miami, FL 33143
Tel.: 305.357.9000
Facs.: 305.357.9050
mcriden@cridenlove.com
lgrossman@cridenlove.com